KENNETH H. SCOTT ET AL. *v.* TRESSA W. S. FURROW

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued February 4—decided March 16, 1954

*Charles G. Albom* and *Andrew F. Pulaski,* with whom, on the brief, was *Philip Mancini, Jr.,* for the appellants (plaintiffs).

*Frederick S. Harris,* for the appellee (defendant).

BALDWIN, J. The plaintiffs brought a habeas corpus action to secure the custody of two minor chil-

dren. The Superior Court rendered judgment for the defendant, and the plaintiffs have appealed.

The facts found by the court may be stated, in summary, as follows: The plaintiff Kenneth H. Scott, of Lincoln, Maine, and the defendant, Tressa W. (Scott) Furrow, of Southington, Connecticut, are the parents of two minor children, Kenneth, twelve years old, and Beth Ellen, about ten. The plaintiff Pearl Scott, also of Lincoln, is the paternal grandfather. The plaintiff Kenneth and the defendant had married in Maine and lived together there until June 30, 1950, when they separated. The defendant took the children with her. She sought work at various places in Maine to support them and herself. She had the custody of the children with their father's consent. An action for divorce was brought by her in Maine, and at about the same time Kenneth also sued for a divorce. These actions were tried together in November, 1950. The court denied a divorce to the defendant and dismissed Kenneth's petition without prejudice. In January, 1951, the defendant decided that, to support herself and the children properly, it was necessary for her to go to Connecticut, where she expected to obtain employment. She notified the police and the teachers in the school which her children attended in Lincoln, Maine, of her intentions. She came to Meriden, Connecticut, in February, 1951, and found employment. She had the purpose of establishing a permanent residence, and she and the children have been domiciled in Connecticut since February 28, 1951.

On June 22, 1951, Kenneth instituted an action for divorce and custody of the children in the Superior Court for Penobscot County, Maine. The defendant was described in the action as domiciled in, and a

resident of, Meriden, Connecticut. She entered an appearance by counsel and participated in the trial. Kenneth was granted a divorce on February 1, 1952, on the ground of cruel and abusive treatment. Custody of the children was awarded to the plaintiff Pearl and his wife, the paternal grandparents. The plaintiffs have contributed nothing to the support of the children since the parties separated in June, 1950, except a payment of $115 made during the period between August and October of that year.

On February 16, 1952, the defendant married Norman Furrow, who is the father of three children by a prior marriage. He had formerly lived in the same town in Maine where the Scotts lived. He and the defendant appeared to have had a romantic interest in each other. After the defendant moved to Connecticut, Furrow found employment here, purchased property and built on it. Since their marriage, the defendant and Furrow have lived together with their children. Their home is in Southington, in the basement of a house under construction. It is primitive but adequate and comfortable. The Scott children regularly attend school and have made good progress. They are well clothed and fed, well behaved and mannered, and enjoy good health. They have formed friendships with other children in the neighborhood where they live and are happy and well adjusted. They love their mother and have a high regard and affection for their step-father, who has been attentive to and considerate of them. Kenneth and his father, Pearl, are men of good character. Kenneth is gainfully employed. Each owns a home of his own. The paternal grandmother, to whom, with the plaintiff Pearl, the Maine court awarded custody of the Scott children, has since died, and there is no woman in either Scott

household to provide for the care of the children.

The trial court reached the following conclusions: The children were not surreptitiously or unlawfully brought from Maine to Connecticut. It was necessary and proper for the defendant to establish a separate domicil here. The children have been domiciled with the defendant in Connecticut since February 28, 1951. There has been a material change of circumstances since the entry of the Maine decree. It was within the jurisdiction of the trial court to determine custody of the children, and their best interests required that they remain with their mother.

The plaintiffs seek extensive corrections in the finding. Their claim that certain paragraphs of their draft finding should be incorporated is without merit. They attack the facts as found in two essential particulars. These are that after the separation of the parties in Maine the defendant had the custody of the children with their father's consent and that the children had been domiciled in Connecticut since February 28, 1951. The defendant has failed to have printed, in an appendix to her brief, excerpts from the testimony to support these or any of the paragraphs of the finding which are under attack. She has, instead, referred in her brief to those portions of the transcript of the testimony which she maintains support the questioned findings. This does not comply with the rules. Practice Book §§ 446, 449. We are under no duty to search a transcript of the testimony to find support for a finding under attack. The trial court, however, did find, and it has not been questioned, that when the parties separated on June 30, 1950, the defendant took the two children with her and thereafter supported them herself, except for a contribution of $115 made by the plaintiffs; that

Kenneth made no effort to secure their custody until he instituted the divorce action in June, 1951; and that the defendant came to Connecticut, with the children, in February, 1951, because it was necessary for her to do so in order to support herself and the children properly. The trial court has further found that the defendant has been domiciled in Connecticut since that time. From these facts, the court could properly infer that the defendant had the custody of the children with the plaintiff's consent when she brought them to Connecticut and that they had been domiciled with her since that time.

The plaintiffs claim that the children were domiciled in Maine and that the trial court was bound by the Maine decree as to custody; that, even if it was not, there had been no change of circumstances which warranted a change in the order; and that the court abused its discretion in awarding the custody of the children to the defendant. The defendant, on the other hand, attacks the Maine decree on the ground that the children were domiciled in Connecticut and were beyond the jurisdiction of the Maine court. The Maine decree, however, cannot be questioned. The defendant appeared in the action both by counsel and personally. Since she submitted herself to the jurisdiction of the court, the whole matter of the marital status of the parties, including the custody of the children, was before the court. Under these circumstances, the domicil of the children at the time was immaterial. *Krasnow* v. *Krasnow,* 140 Conn. 254, 259, 99 A.2d 104; 2 Schouler, Marriage, Divorce, Separation & Domestic Relations (6th Ed.) § 1878. The Maine decree was not, in itself, effective to change the domicil of the children. The grandparents, to whom custody was awarded, never took the children to Maine to reside, and it is not neces-

sary for us to decide what effect such action would have had upon the children's domicil.

The determinative question is whether the Superior Court of this state had the power to modify, in effect, the order of custody made by the Maine court. This, in turn, depends upon the domicil of the children. Under the law of Maine, as of Connecticut, parents are the joint guardians of their children and have equal rights to their custody. Me. Rev. Stat. c. 153, § 16 (1944); General Statutes § 6850; *Cummings, Appellant,* 126 Me. 111, 112, 136 A. 662; *Pfeiffer* v. *Pfeiffer,* 99 Conn. 154, 157, 121 A. 174. The right of custody in one parent is independent of such right in the other. *Illingworth* v. *Madden,* 135 Me. 159, 166, 192 A. 273. A married woman, at least with respect to a divorce action, can acquire a domicil separate from, and independent of, her husband. *Torlonia* v. *Torlonia,* 108 Conn. 292, 300, 142 A. 843; *Boardman* v. *Boardman,* 135 Conn. 124, 136, 62 A.2d 521; Keezer, Marriage & Divorce (3d Ed.) § 60. This she may do irrespective of the question of fault. *Boardman* v. *Boardman,* supra; *Williams* v. *North Carolina,* 317 U.S. 287, 63 S. Ct. 207, 87 L. Ed. 279. In the *Williams* case, the court pointed out (p. 301) that there was no reason "for making the existence of a state power depend on an inquiry as to where the fault in each domestic dispute lies." Therefore if the defendant could acquire a separate domicil from that of Kenneth, and if she has an equal right with him to the custody of their children, the new domicil acquired by her would, by derivation, become theirs if they continued to reside with her. *Boardman* v. *Boardman,* supra, 138. The plaintiff having instituted a habeas corpus proceeding in the Superior Court of this state, where the children are domiciled, that court had jurisdiction to determine their cus-

tody. *Boardman* v. *Boardman,* supra, 138; *White* v. *White,* 138 Conn. 1, 9, 81 A.2d 450; Restatement, Conflict of Laws, § 117; 2 Beale, Conflict of Laws, § 144.3.

The plaintiffs' contention that the trial court could not enter a different order from that entered in the Maine court unless there has been a material change of circumstances is well founded. The courts of Maine could modify the order only upon proof of such a change of circumstances as warranted the modification. Me. Rev. Stat. c. 153, § 69 (1944); *White* v. *Shalit,* 136 Me. 65, 68, 1 A.2d 765. The trial court was bound to recognize and enforce the Maine decree unless a change of circumstances arising since the date of that decree justified a different order. *Freund* v. *Burns,* 131 Conn. 380, 383, 40 A.2d 754, and cases cited. In any action for custody, the paramount consideration is always the welfare of the children. *Bailey* v. *Mars,* 138 Conn. 593, 600, 87 A.2d 388; *Krasnow* v. *Krasnow,* 140 Conn. 254, 260, 99 A.2d 104; *Grover* v. *Grover,* 143 Me. 34, 37, 54 A.2d 637. The rationale of this rule is well stated in *Corrie* v. *Corrie,* 42 Mich. 509, 510, 4 N.W. 213, and in 1 Bailey, Habeas Corpus, page 581. The death of the paternal grandmother since the date of the Maine decree, the fact that there is no woman in the home of either of the plaintiffs to care for the children, and the fact that since coming to Connecticut they have been well cared for and are adjusted to their new home support a finding of sufficient change of circumstances to warrant the denial of the application. The answer to the question of what the welfare of the children requires calls for the exercise of a legal discretion by the trial court. Bearing in mind the rule that their welfare is to be considered above everything else, we cannot say, in this case, that the

discretion of the trial court was abused. *Kelsey* v. *Green*, 69 Conn. 291, 301, 37 A. 679; *Pfeiffer* v. *Pfeiffer*, 99 Conn. 154, 157, 121 A. 174.

There is no error.[1]

In this opinion the other judges concurred.

---

[1] Through a clerical error, the judgment file fails to incorporate the order of custody noted in the memorandum of the trial court. The judgment file should be corrected.