**In the Interest of D.B., A Child,**

**A.B., Natural Mother, Appellant.**

**No. 91–1076.**

Court of Appeals of Iowa.

Feb. 25, 1992.

John S. Pieters of Pieters, Pieters & Corzine, Waterloo, for appellant mother.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

DONIELSON, Presiding Judge.

When the child, D.B., was born in April of 1990, his blood tested positive for cocaine. On that basis, he was adjudicated to be a child in need of assistance almost immediately, and the Department of Human Services placed him with his maternal aunt. While D.B.'s aunt cared for him during the first eight months of his life, she repeatedly requested that he be removed from her home. She voluntarily withdrew each of these requests however, and D.B. was left in her care.

However, on December 16, 1990, D.B. was removed from his aunt's home at her request. She explained that her back problem was worsening and that she planned to leave town for five months. She also expressed the hope that a temporary removal from her home might motivate the child's mother to quit using drugs and show more responsibility. The caseworker also noted D.B.'s aunt had failed to take him to several Early Development Intervention appointments.

D.B. was then placed in non-relative foster care, where he has since remained. His aunt exercised visitation sporadically during the child's foster care, missing a number of the scheduled visits. During her in-home visitation, D.B.'s aunt allowed him to have unsupervised contact with his mother, violating a juvenile court order.

In January 1991, the State filed a petition to terminate the parental rights of both natural parents. D.B.'s mother, A.B., has a severe substance abuse problem, which she has never successfully addressed. She has little education, has never held employment, and has a record of arrests for prostitution. D.B. has never lived with his mother, and D.B.'s putative father, who cannot be located, has had no role in his life.

After a hearing, the juvenile court terminated the parental rights of both parents. In its order, the juvenile court denied the aunt's request that the child be placed in her guardianship and custody. Instead, the juvenile court transferred the child's guardianship and custody to the Department of Human Services for adoptive placement. In declining to place D.B. with the aunt, the juvenile court stated the aunt "has exhibited inconsistency and instability with respect to caring for the child, and the child has now developed a stable relation-

ship with his present foster parents." The juvenile court further stated that its ruling "is not intended to preclude the Department from considering [the aunt] as an adoptive parent."

The mother has appealed from the juvenile court's order. She does not challenge the termination of her own parental rights but contends only that the juvenile court should have placed D.B. with the aunt pending adoptive placement. The mother argues the aunt has previously cared for D.B. effectively and should be given a preference because she is D.B.'s natural relative. The State responds that placement with the aunt is not in D.B.'s best interests. The State also questions the mother's standing to challenge the juvenile court's placement of D.B. following the termination.

 On our de novo review, we affirm the juvenile court's order. The mother's parental rights were terminated by the juvenile court. Having decided not to seek review of that decision, the mother has allowed that portion of the order to become final. The termination of A.B.'s parental rights concerning D.B. divests her of all privileges, duties and powers with respect to the child. Iowa Code § 232.2(52) (1991 Supp.). As such, A.B.'s failure to challenge the termination of her parental rights to D.B. relinquishes any legally recognizable interest she would have concerning the guardianship or custody of D.B. Therefore, she cannot be said to have been prejudiced or aggrieved by the placement order. A party who is not aggrieved by a judgment or other final ruling has no right to appeal. *See Wyatt v. Crimmins*, 277 N.W.2d 615, 617 (Iowa 1979). Consequently, we need not even entertain this appeal. *Id.*

We, nevertheless, find the juvenile court's order to be in the child's best interests. The aunt's vacillation in her resolve to keep the child, her eventual decision to have D.B. temporarily placed in foster care, her violation of court orders regarding D.B.'s welfare, her failure to regularly visit D.B. in foster care, her failure to take D.B. to his required appointments, and D.B.'s

stable relationship with his present foster parents all militate against granting D.B.'s guardianship and custody to his aunt. Furthermore, the caseworker indicated there would be a preference given to black families in the adoption of D.B. Nothing in the record leads us to believe D.B.'s racial identity has been ignored by the court or will be ignored by the Department of Human Services.

The costs of this appeal are taxed to the mother, A.B.

For all the reasons stated, the judgment of the juvenile court is affirmed.

AFFIRMED.